THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 91-1320

---

ADVANCE UNITED EXPRESSWAYS, INC.,

Plaintiff-Appellee,

versus

EASTMAN KODAK COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

(June 26, 1992)

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges

E. GRADY JOLLY, Circuit Judge:

In this interstate tariff undercharge case, we examine the roles played by the Interstate Commerce Commission and the district courts when the reasonableness of a tariff rate or practice is at issue. For the reasons set forth below, we hold that, in the light of Maislin Industries, U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116 (1990), shippers may assert rate unreasonableness as a defense in an action by a carrier for undercharges and that district courts should refer issues pertaining to rate unreasonableness in such cases to the Interstate Commerce Commission.

I

Advance United Expressways, Inc. ("Advance") hauled cargo for the Eastman-Kodak Company ("Kodak") at rates below the rates in some of the tariffs Advance posted with the ICC. Advance filed for Chapter 11 bankruptcy in Minnesota in 1987.

In 1988, a rate auditor for Advance's bankruptcy estate began billing Kodak for "undercharges," or the difference between the amount paid and the applicable tariff price, on some 7,596 freight bills.

In May 1989, Kodak sought a declaratory order from the Interstate Commerce Commission ("ICC" or "Commission") declaring Advance's rates and practices unreasonable. Advance moved for a contempt order in bankruptcy court, alleging Kodak's petition for a declaratory order violated the automatic stay. The ICC action was then stayed until the bankruptcy stay was lifted on August 14, 1989.

On August 9, 1989, Advance sued Kodak in the United States district court in Dallas, seeking $456,838 in undercharges. Kodak moved for a stay pending the ICC ruling, which was denied. At the invitation of the court, Advance filed its motion for summary judgment on December 22, 1989.

Meanwhile, the ICC had lifted the stay on its proceedings in August 1989. Both Advance and Kodak submitted evidence to the Commission. In February 1990, the ICC ruled for Kodak, applying

the Commission's "negotiated rates policy." This policy provides that, because a carrier is responsible for filing a new tariff when it negotiates a rate below the existing filed tariff's rate, the carrier who fails to file a new tariff, but later tries to collect undercharges on the higher rate of the old filed tariff, acts unreasonably.[1] Thus, Advance's attempt to collect undercharges was an unreasonable practice. The Commission also considered arguments that tariff ADUE 652, a tariff rate with a 20% discount, governed some portion of the shipments in dispute. The Commission found that letters from Advance to Kodak satisfied a "letter of participation" provision of ADUE 652 and that the discounts in the letters that conformed to ADUE 652 governed the shipments. The Commission separately found that Advance's distinct practices

> (1) of negotiating rates, billing and accepting payment
> at the negotiated rate, but assertedly failing to file
> the rates; (2) of billing and accepting payment under
> discount programs provided for in a filed tariff and
> written agreements of participation, but denying the
> applicability of such discounts,...

were unreasonable.

In March 1990, the district court stayed proceedings pending a ruling by the United States Supreme Court in Maislin, which was issued in June. 497 U.S. 116 (1990). In Maislin, the court struck down the negotiated rates doctrine as violative of the "filed rate

---

[1] See NITL -- Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates, 5 I.C.C.2d 623 (1989)(often called the "Negotiated Rates II" decision).

doctrine." As its name implies, this doctrine derives from the Interstate Commerce Act requirement that a carrier's rate be filed, 49 U.S.C. § 10761, and which, simply stated, is that

> this rate is the only lawful charge. Shippers and travellers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed.

Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 97 (1915), *quoted in* Maislin, 110 S.Ct. at 2765, 2766.

Following the decision in Maislin, on November 30 the district court entered summary judgment for Advance. The court rejected Kodak's argument based upon the ICC's 1990 decision as an argument based solely on the negotiated rates policy discredited in Maislin. The court further refused to hear the defense that the filed rate was unreasonable. Citing our opinion in In re Caravan Refrigerated Cargo, Inc., 864 F.2d 388 (5th Cir. 1989), the court held that, although Kodak may properly raise the issue of rate unreasonableness before the ICC, Kodak may not raise the issue as a defense in the action for undercharges. The court, therefore, awarded Advance the entire amount requested and also granted prejudgment interest from the dates of shipment. Two weeks later, judgment was entered for $469,244.78 in undercharges, $150,079 in interest, and $120 in costs. Kodak moved for reconsideration, and later for alteration or stay of the judgment, all of which were denied.

-4-

On July 12, 1991, the ICC granted a petition by Kodak to reopen its proceedings against Advance in the light of <u>Maislin</u>. That decision reaffirmed the determination that the 20% discount rate applied to a significant number of the disputed bills. The ICC has set a schedule for the introduction of evidence on the reasonableness of Advance's tariffs.

Kodak here appeals the summary judgment entered by the district court. Kodak has taken pains to point out that it does not appeal the refusal of the district court to apply the negotiated rates doctrine. Instead, Kodak attacks the summary judgment by raising three distinct arguments: (1) the district court should have deferred to the ICC in its decision on the applicable tariff; (2) Kodak should have been allowed to present its defense that the tariffs were unreasonable; and (3) if the court refused to grant Kodak an opportunity to present its defense of unreasonableness, then the court should have stayed its proceedings to allow the ICC to rule on the issue.[2]

---

[2]Kodak raises another issue which we note only in passing: the court improperly granted summary judgment because of a year-long delay after the motion was filed. This issue lacks merit, since the parties were on notice that summary judgment could be issued at any time later than 20 days after the motion was filed. N.D.Tex. Local R. 5.1. This point is moot, in any event, as we find below that summary judgment was improper for other reasons.

Kodak also argues that the district court abused its discretion by awarding prejudgment interest to Advance and also that it improperly calculated interest from the date of the shipments. Because we reverse the entire award and remand for further consideration, we will pretermit this issue. We note in passing, however, that the proper standard for the award appears

II

We review <u>de novo</u> the summary judgment, applying the same standards of law as those available to the district court. <u>Trial v. Atchison, Topeka and Santa Fe R. Co.</u>, 896 F.2d 120, 122 (5th Cir. 1990). Therefore, to sustain the summary judgment rendered below, we must find that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

III

Our consideration of this appeal begins with an examination of the recent United States Supreme Court opinion in <u>Maislin</u>, a case whose issues and procedural history are similar to our case today. Maislin, a bankrupt carrier, sued a shipper, Primary, for undercharges for freight shipments carried over two years. Primary answered, asserting defenses that the asserted tariff rates were inapplicable to the shipments in issue, that the rates sought were unreasonable, and that the practice of negotiating a rate lower than the tariff and rebilling at the higher tariff rate was unreasonable. The district court found that these defenses raised

---

not to be one of discretion, but, barring extraordinary circumstances, such awards seems to be considered mandatory in order to make the injured party whole, <u>Louisiana & Arkansas Ry. Co. v. Export Drum Co.</u>, 359 F.2d 311 (5th Cir. 1966). <u>Cf.</u> <u>Southern Pacific Transp. Co. v. San Antonio</u>, 748 F.2d 266, 274 (5th Cir. 1984).

issues in the "primary jurisdiction" of the ICC,[3] stayed the court proceedings, and referred the matter to the Commission. Maislin, 110 S.Ct. at 2764. The ICC ruled in Primary's favor, basing its decision on its negotiated rates policy, but not reaching the issue of reasonableness of the rates. Id., and at 2767 n.10. The district court relied upon the ICC ruling and granted summary judgment to Primary. The Eighth Circuit affirmed. Maislin Industries v. Primary Steel, Inc., 879 F.2d 400 (8th Cir. 1989).

As we described above, the Supreme Court reversed, holding that the negotiated rates policy of the ICC is contrary to the purpose and scheme of the Interstate Commerce Act, primarily because the negotiated rates policy undermines the filed rate doctrine, which is fundamental to achieving the purposes of the Act, to provide all shippers a uniform non-discriminatory rate. Maislin, 110 S.Ct. at 2765-2767, 2770-2771. The court then restated the inherent limitation of the filed rate doctrine: The filed rate is not enforceable if it is unreasonable. Maislin, 110 S.Ct. 2676, citing, e.g., Louisville and Nashville R. Co. v. Maxwell, 237 U.S. 94 (1915). Because the ICC had yet to determine whether the tariff rate was itself unreasonable, the court assumed, for the purposes of its opinion, that the rates were reasonable.

---

[3]Under the "primary jurisdiction doctrine," a district court must refer issues committed to the special competence of the ICC to the Commission for determination. City of New Orleans v. Southern Scrap Material Co., 704 F.2d 755, 758 (5th Cir. 1983). The ambit of this doctrine is discussed in greater detail below.

<u>Maislin</u>, 110 S.Ct. at 2767, n.10.  Significantly, the court noted that, "The issue of the reasonableness of the tariff rates is open for exploration on remand." <u>Id</u>.

IV

With the lessons of <u>Maislin</u> in mind, we now turn to the issues raised in this appeal.  The district court applied the filed rate doctrine, relying on <u>Maislin</u>, to reject Kodak's position based on the ICC application of its negotiated rates policy.  On those grounds, the court granted summary judgment for Advance.  Kodak argues that summary judgment was inappropriate because questions of material fact persisted:  which tariffs governed the bills in dispute and whether the rates applied were reasonable.

A

Kodak contends, first, that the district court erred in its failure to entertain the defense of unreasonable tariff rates.  The district court based its decision on this issue upon our holding in <u>In re Caravan Refrigerated Cargo, Inc.</u>, 864 F.2d 388 (5th Cir. 1989). In that case, we determined that unreasonableness of the rate was no defense in an action to collect for undercharges. <u>Caravan</u>, 864 F.2d at 392.  Shippers must first pay the undercharge found owing by the district court; thereafter, the shipper could seek a determination from the ICC that the rate was unreasonable and in a separate proceeding could seek to recoup such money wrongly collected.  <u>Id</u>.  The district court applied this rule and

denied both the defense and a stay to allow Kodak to challenge the tariffs as unreasonable before the ICC.

Kodak urges that the circumstance of this case, in which the carrier was bankrupt at the time of judgment, illustrates a practical fallacy of the approach in Caravan.[4]  Because the carrier's assets, along with the judgment collected in this case, will have been distributed to the creditors before a subsequent action can be filed, Kodak is unlikely ever to recover wrongfully paid monies.  We must acknowledge that the bulk of these cases do seem to arise out of bankruptcies.

The ICC, before us now as *amicus curiae*, argues that the district court's refusal to refer this defense to its jurisdiction nullifies the requirement of 49 U.S.C. § 10701(a) that rates be reasonable.  In Maislin, the ICC points out, the Supreme Court expressly based the reasonableness requirement of the filed rates doctrine upon section 10701.  Maislin, 110 S.Ct. at 2767.

Moreover, in Maislin, the Supreme Court suggested a result directly contrary to our earlier declaration in Caravan:  the

_____

[4]Caravan has not found much support among the circuits.  In Delta Traffic Service, Inc. v. Transtop, Inc., 902 F.2d 101 (1st Cir. 1990), the First Circuit strongly criticized the Caravan result and rejected it by construing earlier decisions of the Supreme Court to bar referral for ICC review of future rates, not historic rates.  902 F.2d at 105. Cf., Delta Traffic Service, Inc. v. Appco Paper & Plastics Corp., 893 F.2d 472, 475 (2d Cir. 1990); Orscheln Bros. Truck Lines, Inc. v. Zenith Electric Corp., 899 F.2d 642, 646 (7th Cir. 1990); West Coast Truck Lines, Inc. v. American Industries, Inc., 893 F.2d 229, 234 (9th Cir. 1990).

reasonableness of the undercharged tariff can be explored on remand. 110 S.Ct. at 2767, n.10. This comment by the Court follows its observation that the filed rate is not enforceable if the rate is unreasonable. Id. 2767. Thus, any issue raised concerning reasonableness obviously would require a determination before the judgment in the case; consequently, unreasonableness of the rate necessarily is a proper defense to raise against the collection of the undercharges. This understanding of Maislin was applied in Orr v. ICC, 912 F.2d 119 (6th Cir. 1990), when the Sixth Circuit expressly applied Maislin to remand an undercharge case to determine reasonableness of the tariff. See also Atlantis Express, Inc. v. Standard Transportation Services, Inc., ___F.2d___ (8th Cir. 1992).

The Supreme Court's allowance of unreasonableness as a defense against collection of undercharges trumps our holding to the contrary in Caravan. We therefore hold that the district court erred in refusing Kodak this defense.

B

In support of its argument that the applicable tariff rates are still undetermined, Kodak points to the ICC determination that the discount rate governed many of the shipments instead of the more expensive non-discount tariffs. The district court evidently based the judgment on the higher rate tariffs, although there is no reference to the calculations in the court's opinion or judgment.

-10-

Both sides agree that discovery concerning the matter was ongoing at the time the court entered summary judgment. We therefore hold that a genuine question of material fact persists as to which tariffs govern the bills in issue, and accordingly vacate the summary judgment in all respects.

V

Having determined that Kodak was entitled to assert rate unreasonableness as a defense and that the applicable rate is yet to be determined, we are still confronted with the question of the appropriate forum for the determination of these issues. Kodak argues that the district court should have stayed the whole matter and referred the issues to the ICC. In the event the district court was not bound to refer the matter to the ICC, Kodak still seeks to stay enforcement of the district court's judgment until the ICC has rendered its opinion on these issues that are now pending before it.

The general division of initial jurisdiction between the courts and the ICC is defined by the "primary jurisdiction doctrine," which requires that

> "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by the act" be submitted initially to the Commission for determination. Therefore, a district court trying a case under the Interstate Commerce Act must, if presented with such an issue, stay its proceedings and refer the case to the Commission.

City of New Orleans v. Southern Scrap Material, 704 F.2d 755, 758 (5th Cir. 1983) (emphasis added) quoting ICC v. Atlantic Coast R., 383 U.S. 576, 579 (1966).  Where the reasonableness of a tariff rate is at issue, the primary jurisdiction doctrine compels that "there must be preliminary resort to the Commission."  Southern Pacific Transport Co. v. City of San Antonio, Texas, 748 F.2d 266, 272 (5th Cir. 1984) (emphasis added) quoting Great Northern Ry. v. Merchants Elevator, 259 U.S. 285, 291 (1922).  Furthermore, when questions of construction and reasonableness of a tariff are "so intertwined that the same factors are determinative of both issues, then it is the Commission which must first pass on them." Coca-Cola Co v. Atchison, T. & S. F. Ry. Co., 608 F.2d 213, 220 (5th Cir. 1989) (emphasis added) quoting U.S. v. Western Pac. R.R., 352 U.S. 59 (1956).

Clearly, the primary jurisdiction doctrine mandates that the defense of unreasonableness initially be committed, according to the usual procedures under 28 U.S.C. § 1336(b), to the ICC for its review and decision.  Upon return of the referred issues from the ICC, the district court should then accord appropriate review.  See Coca-Cola v. Atchison, Topeka and Santa Fe R. Co., 608 F.2d 213, 218 (5th Cir. 1979);  Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-617 (1966).

A separate question of referral and appropriate forum exists, however, concerning the issue of rate applicability.  Matters in

which the facts "raise technical or complex issues, regarding appropriate rates, that require the expert administration of the Commission" are, along with reasonableness, within the primary jurisdiction of the Commission. Caravan, 864 F.2d at 389. Issues of tariff construction and application may be committed to the ICC, particularly if they involve terms or art, cost allocation, or extraordinary constructions of language. Coca-Cola, 608 F.2d at 220. Otherwise, the courts are as competent as the Commission to determine the issue. Id. Even when complicated tariffs are in issue, the doctrine of primary jurisdiction does not require that all questions regarding the tariffs must be first answered by the ICC; when the ICC has already determined the applicable rate, the courts need not refer the question again to the Commission. Coca-Cola, 608 F.2d at 219.

Thus, the district court should initially determine whether a given issue involves reasonableness, complicated or specialized issues of construction, cost allocation, or other bases of primary jurisdiction. If the district court finds that the issue is within the primary jurisdiction of the ICC, the issue must be referred to the Commission. Only if the district court finds that it can resolve the issues before it, using the plain language of the tariffs and the ordinary rules of construction, should the court

then proceed to resolve the issues without referral to the Commission.[5]

In this case, the issue of reasonableness of the applicable tariff is inextricably linked to a prior determination of which tariff will govern the bills in issue. Furthermore, the parties had litigated a portion of the applicability issue before the ICC before the entry of judgment by the district court. Both of these issues should surely have been referred to the ICC for initial determination.

## VI

The summary judgment is VACATED and this cause is REMANDED to the district court for further proceedings not inconsistent with this opinion.

V A C A T E D and R E M A N D E D.

---

[5]In making such a determination, the district courts should be mindful of the economy of maintaining only one action between two parties. Therefore, as in this case, a pending ICC petition between the parties who are also in the district court would militate in favor of referral of any issues related to the pending ICC petition.