RTC TRANSPORTATION, INC., a Georgia Corporation, Motor Carrier Audit & Collection Company, a Division of Delta Traffic Service, Inc., a Texas Corporation, Plaintiffs–Appellees,

v.

CONAGRA POULTRY COMPANY, f/n/a Country Pride Foods, Ltd., a Delaware Corporation, Defendant–Appellant.

No. 89–15836.

United States Court of Appeals, Ninth Circuit.

Argued June 12, 1992.

Submission Deferred June 12, 1992.

Submitted June 23, 1992.

Decided July 29, 1992.

**11.** We deny appellee Schlosser's request for damages under Fed.R.App.P. 38. This appeal was not wholly frivolous.

Lawrence A. Wengel, Gary Scott Decker, Greeve, Clifford, Diepenbrock & Paras, Sacramento, Cal., Peter A. Greene, Thompson, Hine & Flory, Washington, D.C., for defendant-appellant.

Miles L. Kavaller, Beverly Hills, Cal., for plaintiffs-appellees.

Before: GOODWIN, SCHROEDER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

This case addresses whether a shipper who did not pay a common carrier's filed rate, but instead paid a lower negotiated rate, may defend an action to collect the undercharge either because the carrier acted as a contract carrier or because the filed rate was unreasonable. The district court granted summary judgment for RTC Transportation, Inc. and Motor Carrier Audit & Collection Company (collectively RTC Transportation) on the grounds that (1) Conagra Poultry Company (Conagra) offered no evidence that RTC Transportation met the statutory definition of a contract carrier; (2) RTC Transportation's unreasonable practices do not afford a defense to the filed rate doctrine; and (3) Conagra did not argue that RTC Transportation's filed rates were unreasonable. We have jurisdiction over the district court's final order. 28 U.S.C. § 1291. We affirm in part, reverse in part and remand to the district court with instructions that it refer to the ICC to determine whether RTC Transportation's filed rates were reasonable.

I

RTC Transportation shipped cargo for Conagra at tariff rates less than those on file with the Interstate Commerce Commission (ICC). RTC Transportation billed Conagra at the lower rates negotiated by

Conagra and RTC Transportation, and Conagra paid them. Following an ownership change, RTC Transportation sought to collect the higher "filed rates" from Conagra.

RTC Transportation filed an "undercharge" claim against Conagra in the district court. Because the ICC has primary jurisdiction over the reasonableness of carriage rates, classifications, rules and practices, *see* 49 U.S.C. § 10701(a), the district court granted Conagra's motion to refer the matter to the ICC. The ICC determined that RTC Transportation had engaged in an unreasonable practice, which the ICC then considered a defense to an undercharge claim. The district court rejected the ICC's determination and applied the "filed rate doctrine." It found that Conagra had not presented a valid defense to the filed rate doctrine and granted summary judgment for RTC Transportation.

We review *de novo* the district court's grant of summary judgment. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339-40 (9th Cir.1989).

## II

Conagra argues that the district court should have found a genuine issue whether RTC Transportation was a contract carrier, because RTC Transportation was a duly licensed contract carrier and it consistently provided service to Conagra at rates other than those on file with the ICC. In deciding Conagra's petition, the ICC found:

> In contending that the operations at issue were contract carriage, petitioner merely refers to RTC's contract carrier authority. It does not indicate how the involved service meets either statutory definition of contract carriage in 49 U.S.C. 10102(14)(B) [sic], or that it satisfied any of the requirements of the Commission's contract carriage regulations at 49 CFR 1053. The evidence here does not suggest that RTC served Conagra as other than a common carrier, and we thus will examine the evidence under our *Negotiated Rates* policy.

*Conagra Poultry Co.*, No. MC-C-30064, 1988 WL 225221, at *3-*4 (I.C.C. Aug. 1, 1988).

■ Because this is an appeal of a grant of summary judgment, we perform the same direct review of the ICC's decision as the district court. *Tzung*, 873 F.2d at 1339-40. We accord substantial deference to statutory interpretations by an agency charged with administering a statute. *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 442 (9th Cir. 1989). We uphold agency findings of fact that are supported by substantial evidence. *NLRB v. Howard Elec. Co.*, 873 F.2d 1287, 1290 (9th Cir.1989).

■ A motor common carrier is "a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(14). A motor contract carrier, by contrast, assigns carriage vehicles "for a continuing period of time for the exclusive use of" the shipper. *Id.* § 10102(15)(B)(i). Among other factual deficiencies, Conagra nowhere asserts any evidence of such an exclusive use contract. We find no genuine issue whether RTC Transportation was a contract carrier and affirm this aspect of the district court's grant of summary judgment.

■ We also affirm the aspect of the district court's judgment precluding Conagra from interposing as a defense to RTC Transportation's undercharge claim the ICC's finding that RTC Transportation engaged in unreasonable trade practices. *Maislin Indus. v. Primary Steel, Inc.*, 497 U.S. 116, ——-——, 110 S.Ct. 2759, 2766-71, 111 L.Ed.2d 94 (1990).

## III

Conagra argues that it should have a second opportunity to argue before the ICC the issue of the reasonableness of RTC Transportation's filed rates. This argument presents two major questions: first, may a shipper interpose rate unreasonableness as a defense to an undercharge claim; and second, did Conagra preserve its rate unreasonableness argument? We recently considered "whether a shipper may raise unreasonableness of the rates as a defense in a filed rate action and thereby cause the

proceedings to be stayed until the ICC resolves the claim." *Milne Truck Lines v. Makita U.S.A., Inc.*, 970 F.2d 564, 569 (9th Cir.1992). We concluded that "a reasonable rate defense is a legitimate assertion of the shipper's statutory right not to pay the filed rate." *Id.* at 571.

### A

Before we proceed to whether Conagra preserved its unreasonable rate defense, we must place our inquiry in perspective. We recognize that we tread in uncharted waters with swiftly moving currents. The Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (the 1980 Act), introduced market mechanisms into an area of law formerly subject to pervasive administrative regulation. *See ICC v. American Trucking Ass'n*, 467 U.S. 354, 367–71, 104 S.Ct. 2458, 2465–67, 81 L.Ed.2d 282 (1984).

One line of cases that has emerged since 1980 involves choosing which of two filed rates is applicable. In *American Trucking*, the Supreme Court found that the ICC has "a statutory basis ... to approve motor-carrier tariffs on the condition that the [ICC] may later nullify increases found to have been submitted in substantial violation of rate-bureau agreements." 467 U.S. at 367, 104 S.Ct. at 2465. The Court held that shippers damaged by filed carrier rates violative of such condition have an overcharge claim, *id.* at 369–70, 104 S.Ct. at 2466–67, which is based on "whatever tariff was in effect prior to the adoption of the rejected rate becom[ing] the applicable tariff for the period during which motor carriers charged the rejected tariff." *Id.* at 358, 104 S.Ct. at 2461.

In a similar vein, we recently considered a case in which a carrier, through its trustee in bankruptcy, sought to collect its full charge rate after it had billed at discount rates, both of which were on file with the ICC. We held, first, that the discount filed rate applies only so long as the shipper meets the timely payment precondition. Afterward, the full charge filed rate applies. *ICC v. Transcon Lines*, 968 F.2d 798, 807 (9th Cir.1992). Second, however, we refused to allow the carrier to assert the unlawfulness of its discount filed rate in an effort to collect, from those who timely paid the discount filed rate, undercharges based on the full charge filed rate. We proscribed such a carrier claim to prevent the carrier from "leap[ing] over the [discount] filed rate." *Id.* at 809.

In *Milne*, we confronted a slightly different situation. Milne had filed discount tariff rates for shipments originating in San Jose, California. Makita paid those discount rates on shipments from Fremont and Cerritos, California. We held, first, that shipments from Fremont might qualify for the San Jose filed discount rate because of Fremont's proximity to San Jose. We remanded the proximity issue for ultimate determination by the ICC. Shipments from Cerritos, which is near Los Angeles, could not possibly qualify for the San Jose discount. *Milne*, 970 F.2d at 567–569. Second, we held that the district court should have referred Makita's contention that Milne's rates were unreasonable to the ICC to vindicate Makita's statutory right not to pay an unreasonable filed rate. *Id.* at 568–572. We expressed no opinion what rate would apply if, on remand, the ICC finds the filed rate unreasonable.

In this case, we do not face a choice between two filed rates. RTC Transportation does not challenge the lawfulness of its own filed rate, which we refused to allow the carrier to do in *Transcon*, but instead seeks to collect its filed rate, the "legal" rate. RTC Transportation thus challenges the legality of its own negotiated rate. *See Transcon Lines*, 968 F.2d at 808–809. Conagra, the shipper, challenges the lawfulness of RTC Transportation's filed rate, asserting that it is not enforceable because it is unreasonable. *Maislin*, 497 U.S. at ——, 110 S.Ct. at 2767.

█ Conagra's challenge poses a question of remedy that we do not reach because we consider it better to allow the ICC

to address the matter in the first instance.[1] The *Maislin* Court specifically stated that "[w]e have never held that a carrier's unreasonable practice justifies departure from the filed tariff schedule." 497 U.S. at ——, 110 S.Ct. at 2767. All of the remedies discussed in *American Trucking* likewise were predicated either on a filed rate or a statute. 467 U.S. at 358, 360, 104 S.Ct. at 2461, 2462. The parties have not briefed the question of the appropriate remedy in the event RTC Transportation's filed rate is unlawful. Logically the negotiated rate presents itself as a benchmark by which to measure damages. We cannot say with certainty, however, that either the statute or recent decisional authority supports that result. As with the rate reasonableness determination, this issue concerns an important matter in a regulatory scheme placed within the ICC's special competence. If RTC Transportation's filed rates are unreasonable, the ICC should proceed to exercise its primary jurisdiction with respect to remedy. *See United States v. Western Pac. R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956).

We consider a carrier attempting to collect its "legal" filed rate. Because of a lower negotiated rate, the shipper challenges the lawfulness, and thus the enforceability, of that filed rate. *See generally Transcon Lines*, 968 F.2d at 808–809 (explaining technical jargon). If the filed rate is indeed unlawful, the ICC will, in the first instance, determine the true lawful rate. Having placed our inquiry in perspective, we proceed to the question whether Conagra preserved the rate unreasonableness defense.

### B

■■■ The "filed rate applies *'unless it is found by the Commission to be unreasonable.'*" *Maislin*, 497 U.S. at ——, 110 S.Ct. at 2767 (quoting *Louisville & N.R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915)) (emphasis

added by the *Maislin* Court). Contrary to Conagra's argument in its opening brief, a determination whether a common carrier's rate is reasonable is not jurisdictional, but an issue that an aggrieved shipper must raise and preserve. *Id.* 497 U.S. at ——, 110 S.Ct. at 2767. The ICC has exclusive primary jurisdiction to determine the reasonableness of a filed rate. *Union Pac. R.R. v. Bay Area Shippers Consolidating Ass'n*, 594 F.2d 1291, 1294 (9th Cir.1979).

### 1

■■■ Conagra raised the issue of the unreasonableness of RTC Transportation's filed rates as the sixth defense in its answer. Conagra, Answer and Demand for Jury Trial 3 (Mar. 5, 1987). The district court referred to the ICC a "determination o[f] the reasonableness of the carrier rates and practices." Order, No. CV–S–86–1509–MLS, at 2 (Aug. 11, 1987). We presume that Conagra made a showing before the district court satisfactory to warrant this initial reference. *See Milne*, 970 F.2d at 571–72.

A fair reading of the transcript of the bench ruling reveals that the district court focused primarily on unreasonable practices, not rates, as the contested issue being referred. Transcript of Bench Ruling, No. CV–S–86–1509–MLS, at 3–6 (June 26, 1987). It also felt that the ICC's determination would be advisory only. *Id.* Even so, to this point, Conagra raised and preserved the rate unreasonableness issue.

### 2

Conagra then "petition[ed] the [ICC] for a declaratory order resolving the issue of the reasonableness of the carrier rates and practices." Conagra, Petition for Declaratory Order 1 (Sept. 9, 1987). As with the district court's reference, a fair reading of Conagra's petition reveals a focus on the unreasonable practices issue:

4. In response to [RTC Transportation]'s claim ConAgra has asserted, *inter*

---

**1.** Indeed, the ICC need not even reach the remedial question if RTC Transportation's filed rate

is reasonable.

*alia,* that collection of additional charges would constitute an unreasonable practice in violation of the provisions of 49 U.S.C. § 10701.

> 5. Because only the I[CC] may determine the unreasonableness of a practice engaged in by a carrier subject to its jurisdiction, Conagra moved for an order referring this case to the ICC for such a determination.
>
> ....
>
> WHEREFORE, ConAgra prays that the ICC ... enter an Order resolving the issues presented herein and terminating this controversy....

*Id.* at 2–3. Despite the petition's focus on the unreasonable practices issue, it adequately raises the issue of rate unreasonableness.

Conagra argues that it presented evidence of both issues to the ICC, but that the ICC decided only the unreasonable practices issue, resolving the case. Conagra contends that a review of the record reveals that it produced ample evidence before the ICC pertaining to rate unreasonableness. *See Rate Reasonableness and Unreasonable Practices,* 8 I.C.C.2d 61, 74–77 (1991) (petitions for policy statement) (setting out factors).[2] Conagra bases its argument primarily on the verified statement of Jesse Walters, a Conagra manager who negotiated tariff rates with RTC Transportation.

Walters compared RTC Transportation's rates with those he had solicited from other carriers:

> The rates that I negotiated with RTC were actually slightly higher than the rates quoted to us by the other carriers available to us to perform the same service for which we used RTC. However, because RTC performed a very high quality and reliable service we were willing to pay at a slightly higher rate.
>
> ....
>
> If at any time ... any suggestion had been made that the [applicable] rates ...

were other and higher than those quoted to us, ... we could and would have immediately begun to use other carriers then available to us at rates which were actually slightly below those of RTC.

Jesse Walters, Verified Statement 2, 4 (Dec. 1, 1987). With respect to rate comparisons, the ICC states that "one of the best standards for determining the justness and reasonableness of a rate is a comparison thereof with rates on the same commodity to and from points in the same general territory." *Rate Reasonableness,* 8 I.C.C.2d at 74 (internal quotation omitted). Although Walters' statement does not provide numerical quantification, it very clearly supports the concept articulated by the ICC. RTC Transportation's slightly higher negotiated rates were reasonable in the marketplace; its still higher filed rates arguably were not.

As well, the rates proffered by RTC Transportation and relied upon by Conagra provide evidence of a reasonable rate. *Id.* at 75 & n. 23. "For each such shipment [RTC] is contending that we now must pay rates different from and higher than those quoted to us by RTC, paid by us and accepted by RTC." Jesse Walters, Verified Statement 3.

Finally, Walters' statement that higher rates would have resulted in a turn to other carriers addresses "[t]he most pragmatic of the criteria[:] whether the tariff rate upon which an undercharge claim is based is so high that it would not have moved the traffic at issue had it been quoted at the time the shipment took place." *Rate Reasonableness,* 8 I.C.C.2d at 76. We conclude that Conagra raised and presented the issue of rate unreasonableness to the ICC. *Cf. Railway Labor Executives' Ass'n v. ICC,* 958 F.2d 252, 257 (9th Cir.1991) (citation of cases in an ICC merger approval hearing allows argument of issues contained therein on appeal).

In deciding Conagra's petition, the ICC addressed rate reasonableness only in pass-

---

**2.** Because the question is not before us, we do not address whether the ICC's policy for determining rate unreasonableness conforms to the language and structure of the Interstate Com-

merce Act. *Cf. Maislin,* 497 U.S. at ——–——, 110 S.Ct. at 2767–68 (holding ICC's policy contrary to Act, but not holding that no defense exists).

ing, noting that RTC Transportation claimed that its rates were reasonable. The ICC then proceeded to find that RTC Transportation committed an unreasonable practice under the now-discredited *Negotiated Rates* policy.[3] *Conagra Poultry Co.*, No. MC–C–30064, 1988 WL 225221 (I.C.C. Aug. 1, 1988). The ICC's policy to avoid the question of unreasonable rates by resorting to an unreasonable practices analysis clearly manifested itself in a petition decided slightly more than a month before *Conagra* Poultry. *A.J. Hollander Co.*, No. MC–C–30013, 1988 WL 225573, at *6 (I.C.C. June 30, 1988) ("In view of these findings it is not necessary to address whether the higher rates sought by Maislin et al. are reasonable."). We refuse to penalize Conagra because the ICC found it unnecessary to address all of the grounds Conagra advanced in support of its petition. *See Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1575 n. 3 (9th Cir.1986) (declining to examine an issue because case resolved on other grounds).

### 3

Upon securing a favorable determination from the ICC, Conagra moved for summary judgment in the district court. Understandably, Conagra relied heavily on the ICC's unreasonable practices determination. RTC Transportation vigorously opposed the interposition of the ICC's unreasonable practices determination as an equitable defense to the filed rate doctrine. RTC Transportation, Memorandum of Points and Authorities 13–28 (Jan. 17, 1989). The district court agreed with RTC Transportation, granted summary judgment in RTC Transportation's favor and ruled from the bench:

> Defendant does not contest that the plaintiff transported goods for it or that plaintiff had lawful tariffs on file with the [ICC]. Neither does defendant argue that plaintiffs' filed tariffs were ambiguous or unreasonable. Given this, plaintiff has borne its burden of showing that there is no triable issue of fact.

> . . . .

> As discussed previously, the Court is persuaded that it is required to apply the filed rate doctrine in this case. Under the filed rate doctrine, a Court may not entertain an equitable defense to a carrier's undercharge claim. Therefore, defendant has not borne its burden of showing it is entitled to judgment as a matter of law.

Transcript of Bench Ruling, No. CV–S–86–1509–MLS, at 5, 7 (Mar. 3, 1989) (citation omitted). Conagra contends that the district court erred in concluding that Conagra did not argue that RTC Transportation's rates were unreasonable.

 A party cannot appeal a *judgment* entirely in its favor. It may, however, advance additional arguments in support of the judgment in its answering brief. *Byron v. Clay*, 867 F.2d 1049, 1050 (7th Cir.1989); *see Native Village of Tyonek v. Puckett*, 957 F.2d 631, 633–34 (9th Cir. 1992) (no standing to cross-appeal favorable dismissal by district court). Similarly, Conagra may argue an alternative ground for decision—advanced before the ICC—that the ICC concluded was not necessary to its decision.

Although Conagra focused on defending the ICC's unreasonable practices decision, it continued to pursue the unreasonable rates issue:

> The first [question] is whether the defense of unreasonableness of a carrier rate or practice is one which must be referred to the ICC for determination in the first instance pursuant to its exclusive primary jurisdiction. . . .

> In rendering its decision of August 11, 1987, this Court has already determined that unreasonableness of a carrier rate or practice is a valid defense to RTC's claim and that the initial determination of that defense is a matter within the primary jurisdiction of the ICC. . . .

> . . . .

---

**3.** *National Indus. Transp. League,* 3 I.C.C.2d 99 (1986) (petition to institute rulemaking), *clarified,* 5 I.C.C.2d 623 (1989) (*"Negotiated Rates"*)), *disapproved by Maislin,* 497 U.S. at ——, 110 S.Ct. 2759.

... [T]he requirement of 49 U.S.C. § 10761(a) to charge a published tariff rate and the requirement of 49 U.S.C. § 10701(a) that carrier rates and practices must be reasonable, have always been read in harmony....

. . . .

At page 19, RTC cites four Ninth Circuit cases for the proposition that the filed rate doctrine must be followed notwithstanding the ICC's decision on referral. None of those cases supports RTC's position.... The [cited] case had nothing to do with a defense of unreasonableness or the authority of the ICC to grant relief based on such a defense.... [Citation], involved an issue of unreasonable rates rather than practices and, *unlike here, the shipper conceded that the rate was reasonable.* Therefore, the court refused to refer the case to the ICC because there was no issue for the ICC to address.

Conagra, Reply in Opposition to RTC Transportation's Motion for Partial Summary Judgment 3, 5, 11–12 (Feb. 17, 1989) (citations omitted) (emphasis added). Based on Conagra's effort to apprise the district court of this ground for relief, which the ICC left unaddressed, we conclude that the district court erred when it decided that "defendant [does not] argue that plaintiffs' filed tariffs were ambiguous or unreasonable." Transcript of Bench Ruling, *supra,* at 5. We reverse the district court's judgment on this matter.

4

 If the district court avoids an issue that, on appellate review, becomes dispositive, we will decide a question of law and resolve the case. *Gladden v. Frazier,* 388 F.2d 777, 782–83 (9th Cir.1968); *see Marino v. Vasquez,* 812 F.2d 499, 508 (9th Cir.1987) (affirm on any ground finding support in the record). If we are not equipped to address the issue, we remand to the appropriate court. *American State Bank v. Marks (In re MacNeil),* 907 F.2d 903, 904 (9th Cir.1990) (not deciding priority between two classes of bankruptcy claims because bankruptcy court made no factual finding that claims actually fit into either of the classes). In this case, the ICC avoid-

ed an issue within its primary jurisdiction. *Union Pac.,* 594 F.2d at 1294. We remand to the district court with instructions that it refer to the ICC for a determination of the reasonableness of RTC Transportation's filed rates.

IV

The district court's summary judgment is AFFIRMED IN PART, REVERSED IN PART and REMANDED WITH INSTRUCTIONS that it refer to the ICC for a determination of the reasonableness of RTC Transportation's filed rates.

Each party shall bear its own appeal costs.