**JONES TRUCK LINES, INC., Debtor In Possession, Plaintiff,**

v.

**IVERSEN BAKING COMPANY, Defendant.**

Civ. No. 93-5104.

United States District Court, W.D. Arkansas, Fayetteville Division.

Oct. 13, 1993.

Charles T. Coleman, Wright, Lindsey & Jennings, Little Rock, AR, David G. Sperry, Independence, MO, for plaintiff.

Robert Beckman, Bogatin, Lawson & Chiapella, Memphis, TN, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Presently pending for disposition in the above styled matter is a motion for order of reference [1] to the Interstate Commerce Commission filed by the defendant, Iversen Baking Company. The plaintiff, Jones Truck Lines, Inc. (Jones), has responded and the court is now ready to rule on the motion. For the reasons set forth below, the court finds that the motion for order of reference to the Interstate Commerce Commission should be and hereby is denied.

This action was filed on June 14, 1993, one of numerous cases on the court's docket filed by Jones against shippers in an attempt to recover uncollected undercharges for freight carried by Jones. Jones, a Northwest Ar-

kansas transportation company currently in Chapter 11 bankruptcy proceedings, contends that the defendant, Iversen Baking Co., tendered freight to Jones for transportation in interstate and/or intrastate commerce and thereafter Jones performed services for the defendant pursuant to authority issued it by the Interstate Commerce Commission (ICC). Jones contends that all of defendant's shipments now have been audited by comparing the commodities, weights, points or origin and destination, and declared value of each shipment to the applicable tariff rate and rules provisions on file with the ICC and/or applicable intrastate law provisions which were effective on the date of the shipment. As a result of the audit, Jones seeks to recover $1,688.29 in freight undercharges which previously have been demanded and refused.

Defendant's answer asserts, *inter alia,* the following affirmative defenses: (1) this case should be referred to the ICC under the "primary jurisdiction" doctrine, (2) the plaintiff may not recover undercharges as it carried defendant's freight as a motor contract carrier rather than a motor common carrier, and (3) the plaintiff's tariff rates for freight are unreasonable. Although not presently ripe for adjudication, plaintiff has filed a motion to strike defendant's affirmative defenses, alleging them to be without merit. Disposition of the matter currently before the court, however, has the effect of rendering plaintiff's motion to strike moot.

These affirmative defenses form the basis for defendant's motion for order of reference. Defendant contends that the transportation services provided by the plaintiff were pursuant to contract carrier requirements and are therefore exempt from the "filed rate" doctrine under which plaintiff now seeks to collect undercharges. Defendant maintains that a transportation agreement between the parties, effective on February 15, 1988, supports the conclusion that shipments were moved pursuant to contract carrier authority

---

1. The court directs defendant to the Supreme Court's recent decision of *Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), where the Court noted that the use of the term "referral" to the ICC is technically incorrect because no mechanism exists for a court to

demand or request an ICC determination. The court explained that courts must simply stay proceedings while an administrative proceeding is filed pursuant to 49 U.S.C. § 11701(b). *Reiter,* —— U.S. ——, ——, 113 S.Ct. 1213, 1220 n. 3.

rather than common carrier requirements as plaintiff argues. Defendant argues, therefore, that the contractual rate governs the shipping charges rather than the published tariffs rates. Thus, defendant asserts that the contract versus common carriage issue should be decided by the ICC under the "primary jurisdiction" doctrine. Defendant also contests the reasonableness of the rates charged by the plaintiff, contending that application of the unreasonable rate defense also falls within the ICC's primary jurisdiction.

Plaintiff's position in response to the motion is that the alleged contract between Jones and the defendant is wholly insufficient to establish contract carriage and as a result, common carriage tariffs and the fixed rate doctrine are applicable. Framing the sole issue as one whether plaintiff acted as a common carrier or a contract carrier on behalf of the defendant, plaintiff maintains that the agreement proffered by the defendant does not meet the statutory requirements for contract carriage. Arguing that the alleged contract provides for neither the dedication of equipment for defendant's continuing and exclusive use nor the furnishing of service designed to meet defendant's distinct needs, plaintiff contends that the agreement was no more than a negotiated common carrier rate.

With respect to defendant's argument that the rates are unreasonable, plaintiff first asserts that the unreasonableness of shipping rates is not a legal defense to freight undercharges. Alternatively, plaintiff asserts that the defendant has failed to specify which of plaintiff's rates and practices are unreasonable, instead making conclusory allegations of unreasonableness which are insufficient to the defense. Plaintiff requests that the court adjudicate immediately the claim against the defendant without reference of this matter to the ICC and without a stay of this action.

### Primary Jurisdiction

Defendant's motion is one for order of reference to the Interstate Commerce Commission based upon the general division of initial jurisdiction between the courts and the ICC known as the "primary jurisdiction" doctrine. The doctrine requires that "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by the act" be submitted initially to the Commission for determination. Therefore, a district court trying a case under the Interstate Commerce Act *must,* if presented with such an issue, stay its proceedings and refer the case to the Commission.

*Advance United Expressways, Inc. v. Eastman Kodak Co.,* 965 F.2d 1347, 1353 (5th Cir.1992), quoting *ICC v. Atlantic Coast R.,* 383 U.S. 576, 579, 86 S.Ct. 1000, 1003, 16 L.Ed.2d 109 (1966). Thus, "matters in which the facts 'raise technical or complex issues, regarding appropriate rates, that require the expert administration of the Commission' are, ..., within the primary jurisdiction of the Commission." *In re Caravan Refrigerated Cargo, Inc.,* 864 F.2d 388, 389 (5th Cir. 1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990).

 The doctrine of primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular duties." *United States v. Western Pacific R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956). The Court of Appeals for the Sixth Circuit has stated that "[t]he principle reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions." *Alltel Tennessee, Inc. v. Tennessee Public Service Com'n,* 913 F.2d 305, 309 (6th Cir.1990), citing *In re Long Distance Tele. Litigation,* 831 F.2d 627, 630 (6th Cir.1987). The doctrine applies, therefore, when an issue arises in the course of litigation which, pursuant to a regulatory scheme, is within the special competence of an administrative agency. *Lifschultz Fast Freight, Inc. v. Rainbow Shops, Inc.,* 784 F.Supp. 89, 90 (S.D.N.Y.1992).

 In such instances, the litigation is stayed pending resolution of the issues by the appropriate administrative body. *United States v. Western Pacific R. Co.,* 352 U.S. at

64, 77 S.Ct. at 165. Thus, the district court should

> initially determine whether a given issue involves reasonableness, complicated or specialized issues of construction, cost allocation, or other bases of primary jurisdiction. If the district court finds that the issue is within the primary jurisdiction of the ICC, the issue must be referred to the Commission. Only if the district court finds that it can resolve the issues before it, using the plain language of the tariffs and the ordinary rules of construction, should the court then proceed to resolve the issues without referral to the Commission.

*Advance United Expressways*, 965 F.2d at 1353. "In making such a determination, the district court should be mindful of the economy of maintaining only one action ... a pending ICC petition.... would militate in favor of referral of any issues related to the pending ICC petition." *Advance United Expressways*, 965 F.2d at 1353, n. 5. A court must, however, apply the doctrine of primary jurisdiction on a case-by-case basis, deferring to an administrative agency only when the reasons for the existence of the doctrine are present. *Id.* Otherwise, courts are as competent as the Commission to determine the issue. *Coca–Cola, Co. v. Atchison, Topeka, and Sante Fe R. Co.*, 608 F.2d 213, 220 (5th Cir.1979). The court must, therefore, proceed to determine whether the two primary issues in this case should be referred to the ICC.

**The ICC and the "Filed Rate" Doctrine**

Under the Interstate Commerce Act, 49 U.S.C. § 10101 et seq. (1993 Supp.), carriers must file and publish tariffs containing the rates for transportation service it may provide in interstate commerce. 49 U.S.C. § 10762(a)(1) (Supp.1993). This concept is commonly referred to as the "filed rate" doctrine, dating back to an attempt made in the 19th century to regulate the "ruthless exercise of monopoly power by the nation's railroads." *Maislin Industries, Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 138, 110 S.Ct. 2759, 2772, 111 L.Ed.2d 94 (1990) (Stevens, J., dissenting). The doctrine was codified by the Act's provision that "a carrier ... shall provide transportation or service only if the rate for the transportation of service is contained in the tariff." 49 U.S.C. § 10761 (Supp.1993). The statutory requirements are designed to prevent carrier discrimination among shippers:

> That carrier may not charge or receive a different compensation for that transportation or service rather than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

49 U.S.C. § 10761(a) (Supp.1993).

The classic statement of the "filed rate" doctrine, governing the legal relationship between carrier and shipper, is contained within *Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). In that case, the Court held that a passenger who purchased a train ticket at a rate misquoted by the ticket agent did not have a defense against the subsequent collection of the higher tariff by the railroad:

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide with it, unless it is found by the Commission to be unreasonable. Ignorance nor misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work a hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.* at 97, 35 S.Ct. at 495.

Despite the harsh effects of the doctrine, the Supreme Court consistently has adhered to the "filed rate" doctrine. *See, e.g., Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983); *Southern Pacific Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343–44, 102 S.Ct. 1815, 1820–21, 72 L.Ed.2d 114 (1982); *Baldwin v. Scott County*

*Milling Co.,* 307 U.S. 478, 484–85, 59 S.Ct. 943, 947–48, 83 L.Ed. 1409 (1939); *Louisville & Nashville R. Co. v. Central Iron & Coal Co.,* 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924). Strict compliance with the filed rates is required of both carriers and shippers; deviation is not permitted and may result in the imposition of civil and criminal sanctions. *Maislin Industries, Inc. v. Primary Steel Inc., supra;* see also 49 U.S.C. §§ 11902–11904 (Supp.1993).

### Contract versus Common Carriage

Prior to deregulation of the transportation industry, the "filed rate" doctrine applied to both contract and common carriers. *See Covey v. ConAgra, Inc.,* 788 F.Supp. 1160, 1162 (D.Colo.1992). Exercising its statutory authority, the ICC exempted contract carriers from the doctrine in 1983. Exemption of Motor Contract Carriers from Tariff Filing Requirements, 133 M.C.C. 150 (1983), *aff'd sub nom. Central & S. Motor Freight Tariff Ass'n v. United States,* 757 F.2d 301 (D.C.Cir.), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985).

■ A carrier must meet the statutory requirements to receive the exemption. The Motor Carrier Act of 1980 (MCA) defines "motor contract carrier" as

(B) a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—

(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(15) (Supp.1993). A motor carrier must satisfy both of the requirements of § 10102(15) to be considered a contract carrier, *Dan Barclay, Inc. v. Stewart & Stevenson Serv. Inc.,* 761 F.Supp. 194, 200 (D.Mass.1991). The benefit extended by the exemption is that a motor contract carrier transporting property under exclusive agreements with a shipper need not comply with the requirements of §§ 10761 and 10762.

The Act allows motor carriers to operate as both common carriers and contract carriers, 49 U.S.C. § 10930(a) (Supp.1993), distinguishing a motor common carrier as "a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(14) (Supp.1993). The Supreme Court's decision in *Maislin* has made exceedingly clear, however, that the exception to the filed rate doctrine has not been extended to motor *common* carriers:

Even before passage of the MCA, Congress has allowed the Commission to exempt motor *contract* carriers from the requirement that they adhere to the published tariff, see 49 U.S.C. § 10761(b) (1982 ed.), demonstrating that Congress is aware of the requirement and has deliberately chosen not to disturb it with respect to motor *common* carriers. If strict adherence to §§ 10761 and 10762 as embodies in the filed rate doctrine has become an anachronism in the wake of the MCA, it is the responsibility of Congress to modify or eliminate these sections.

*Maislin,* 497 U.S. at 135–36, 110 S.Ct. at 2770–71.

■ The threshold issue in this action is the nature of the carriage, i.e., whether Jones Truck Lines, Inc. operated as a motor common carrier, as the plaintiff argues, or as a motor contract carrier, as the defendant asserts with respect to the transportation of defendant's goods. Accordingly, if Jones provided the transportation services pursuant to its contract carrier authority rather than its common carrier authority, it is not entitled to its file rates and may not collect the freight undercharges sought in this action. Alternatively, if Jones provided the transportation services pursuant to its common carrier authority, Jones may be able to recover the undercharges subject to the availability of an unreasonable rate defense which will be discussed subsequently.

■ The court recognizes that the ICC has stated repeatedly that it has primary jurisdiction to determine the carriage issue. *For example, see* Nonoperating Motor Carriers—Collection of Undercharges, Ex Parte No. MC–208, 8 I.C.C.2d 313, 320 (1992). The court notes, however, that the factors to be

considered in applying the doctrine of primary jurisdiction are "whether the issues of fact raised in the case are not within the conventional experience of judges; or whether the issues of fact require the exercise of administrative discretion, or require uniformity and consistency in the regulation of business entrusted to a particular agency." *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1377 (10th Cir.1989). Thus, a court is "not required to defer factual issues to an agency under the doctrine of primary jurisdiction if those factual issues are of the sort that the court routinely considers." *Id.*

■ The court believes that whether Jones Truck Lines acted as a "contract carrier" or a "common carrier" is a run of the mill legal question. Whether a particular relationship between a shipper and a carrier is "contractual" or "common" is fact-laden. The development and presentation of relevant facts is the sort of thing that courts do in every contract dispute. As one court has explained:

> The general jurisdiction of the I.C.C. does not bar the court from determining whether the parties operated pursuant to contract or common carriage.... Determination of this type of issue requires the court to interpret and apply the statute which defines contract carriage and well established principles of contract law. Such a task is within the purview of the court and does not require the technical experience of which the agency is the repository.

*Security Serv. Inc. v. Johnson Matthey, Inc.,* 1992 WL 176497 (E.D.Pa. July 15, 1992). Many courts facing the issue of contract carriage versus common carriage have decided the issue on its merits without reference to the ICC. *See RTC Transportation, Inc. v. Conagra Poultry Co.,* 971 F.2d 368 (9th Cir. 1992); *Brizendine v. Autozone, Inc.,* No. 91–2843 (W.D.Tenn.1993); *F.P. Corp. v. Golden West Foods, Inc.,* 807 F.Supp. 1228 (W.D.Va. 1992); *Covey v. Conagra, Inc.,* 788 F.Supp. 1160 (D.Colo.1992); *Dan Barclay, Inc. v. Stewart & Stevenson Serv. Inc.,* 761 F.Supp. 194 (D.Mass.1991). One exception to this pattern is an opinion of the Court of Appeals for the Eighth Circuit, *Atlantis Express, Inc. v. Standard Transportation Services, Inc.,* 955 F.2d 529 (8th Cir.1992).[2]

Defendant has tendered to the court a document signed by both of the parties entitled "Transportation Agreement" reflecting reductions and allowances for freight rates agreed upon by the parties effective February 15, 1988 and "Schedule A" entitled "Application of Agreement" which appears to govern application of rates and charges, classifications and exemptions. Also before the court is a copy of the plaintiff's ICC permit to engage as a motor contract carrier. The court admittedly does not possess the expertise of the ICC in transportation matters. Iversen Baking, however, has not explained what special expertise the ICC might offer in this area nor how the court's decision in this matter will disrupt the exercise of the ICC's authority or diminish uniformity of the law in this area. Construction and interpretation of contracts is a judicial task in which this court is well-versed and thus, the court concludes that the contract versus common carriage issue should not be referred to the ICC.

### Unreasonable Rate Defense

■ Turning to the remaining issue, the alleged unreasonableness of the freight rates,

---

2. The court does not believe that it is required to automatically refer this case to the ICC under the *Atlantis* decision. *Atlantis* was handed down in a period when the ICC had created confusion over its own standards for distinguishing contract from common carriage. Prior to its repeal on May 5, 1992, the Motor Common Carrier Regulations of the ICC required that the contract carriage arrangements be in writing and meet other specified technical arrangements. *See* Contracts for Transp. of Property, 49 C.F.R. § 1053 (1980) (repealed 1992). Upon repeal, the ICC replaced the written contract requirement and technical standards of § 1053 with a totality of the circumstances standard. Interstate Commerce Commission, Ex Parte No. MC–198, Con-

tracts for Transp. of Property, 8 I.C.C.2d 520 (May 5, 1992). *Atlantis* was decided four months before the repeal of § 1053, during the period in which the ICC was retreating from the written contract requirement and it was unclear what standard the ICC would have the courts apply in deciding these issues. The court believes that repeal of § 1053 and substitution of the "totality of the circumstances" test illustrates the ordinary judicial task of determining whether a relationship between carrier and shipper is contract or common carriage. After repeal of the technical standards, the carriage issue is one to be determined based upon all of the facts relevant to the statutory definitions.

the Supreme Court recently restated the one caveat to the filed rate doctrine: the filed rate is unenforceable if the ICC finds the rate to be unreasonable.[3] *Maislin,* 497 U.S. at 132, 110 S.Ct. at 2769. The issue that we must resolve here is not whether the reasonableness of motor common carrier rates falls within the primary jurisdiction of the ICC—the Court has long recognized that the ICC has the primary responsibility for making this determination; where the reasonableness of a tariff rate ·is at issue, the primary jurisdiction doctrine compels that "there must be preliminary resort to the Commission." *Great Northern Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922).

 Rather, the court must determine if the defendant has made a sufficient showing for referral of this issue to the ICC. A party seeking referral is required to "make threshold showing that the ICC could find the rates unreasonable" to justify referral. *Atlantis,* 955 F.2d at 537; *see also F.P. Corp. v. Ken Way Transp., Inc.,* 821 F.Supp. 1032 (E.D.Pa.1993); *Branch Motor Express Co. v. Caloric Corp.,* 914 F.2d 241 (3d Cir.1990). The movant is required to provide more than a "bare conclusory allegation of unreasonableness" before a .court will refer the issue to the ICC. *Atlantis Express, Inc. v. Standard Transportation Services, Inc.,* 955 F.2d 529 (8th Cir.1992); *Delta Traffic Service, Inc. v. Occidental Chemical Corp.,* 846 F.2d 911, 914 (3d Cir.1988); *Bur–Cold Express, Inc. v. Parker Hannifin Corp.,* 808 F.Supp. 553 (S.D.Tex.1992); *Covey v. Conagra, Inc.,* 788 F.Supp. 1160 (D.Colo.1992); *Zurek Express, Inc. v. Intermetro Industries Corp.,* 775 F.Supp. 1215 (D.Minn.1991); *Horn's Mo-*

*tor Express, Inc. v. Harrisburg Paper Co.,* 765 F.Supp. 211, 217 (M.D.Pa.1991); and *Overland Express, Inc. v. International Multifoods,* 765 F.Supp. 1386, 1388 (S.D.Ind.1990). Thus, there must be some evidence presented from which the ICC can make a meaningful determination on the issue of reasonableness. As one court aptly has noted: "[T]he purposes of primary jurisdiction are not implicated since [the defendant] has provided no basis for the need for the involvement of the ICC." *In re Sharm Exp., Inc.,* 127 B.R. 620, 623 (D.Minn.1991). Reference to the ICC on the basis of a "mere incantation of the doctrine of primary jurisdiction would be tantamount to allowing the doctrine to become 'an abstraction to be called into operation at the whim of the pleader.'" *Id.*

 The ICC also has provided guidance on this issue, stating that "[a]lthough there is no single fixed test which the Commission applies to rate reasonableness cases," general criteria to determine reasonableness or the lack thereof include

(a) relevant rate comparisons, (b) a carrier's proffer of a particular rate, (c) whether the rate would have moved the traffic had it been assessed at the time the shipment took place, (d) the class rates for like traffic, and (e) tariff analysis.

*Petition for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement,* Ex Parte No. MC–177 (Sub.–No. 2), 8 I.C.C.2d 61, 74 (1991).

 Looking to the statement of the ICC and the law of the Eighth Circuit, the court finds that defendant clearly has failed to present evidence in its motion for order of reference or brief in support sufficient to

---

3. A majority of circuits have held the alleged unreasonableness of the rates constitutes a valid defense against underfreight charges. *Id.* at 536. *See Milne Truck Lines, Inc. v. Makita, U.S.A.,* 970 F.2d 564 (9th Cir.1992); *Advance United Expressway, Inc. v. ,Eastman Kodak, Co.,* 965 F.2d 1347, 1349 (5th Cir.1992); *Duffy v. BMC Indus.,* 938 F.2d 353, 357 (2d Cir.1991); *Rebel Motor Freight Inc. v. ICC,* 933 F.2d 1009 (6th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 617, 116 L.Ed.2d 638 (1991); *Branch Motor Express Co. v. Caloric Corp.,* 914 F.2d 241 (3d Cir.1990); *Western Transp. Co. v. Wilson and Co.,* 682 F.2d 1227, 1231–32 (7th Cir.1982). Although a case of first impression before the Eighth Circuit in *Atlantis,*

only the Fourth Circuit had held that shippers must first pay freight undercharges and then raise the reasonableness of the rates in a separate, subsequent proceeding. *See Cooper v. Delaware Valley Shippers (In re Carolina Motor Express, Inc.,* 949 F.2d 107, 110 (4th Cir.1991). The Fourth Circuit's opinion, however, recently has been reversed by the Supreme Court in *Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), a decision in which the Court allowed the unreasonable rate defense to be asserted prior to payment of the freight undercharges, treating the defense as a counterclaim for damages under 49 U.S.C. § 11705(b)(3). *Id.* at 1219–21.

sustain referral. Instead, defendant merely has produced a conclusory allegation that plaintiff's freight rates are unreasonable and has asserted its intentions to challenge the reasonableness of the rates, neglecting to present evidence of any of the relevant considerations discussed above. Defendant makes no effort to compare plaintiff's rates with those of other carriers, analyze the tariffs and class rates or otherwise demonstrate that plaintiff's filed rates were unreasonable. Thus, the court finds that defendant has not made the requisite showing for referral of the unreasonable rate defense to the ICC. The court finds that the motion for order of reference should be and hereby is denied in its entirety.