In re SHARM EXPRESS, INC., Debtor.

Edward W. BERGQUIST, Trustee in the Bankruptcy Estate of Sharm Express, Inc., Plaintiff,

v.

LaSALLE–DEITCH COMPANY, INC., Defendant.

Bankruptcy 4–87–3241(K).
Adv. 4–89–337(K).
Civ. 4–90–727.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 6, 1991.

Thomas E. Wolff, Snelling Christensen & Briant, Minneapolis, Minn., for plaintiff.

Thomas J. Lallier, Andrew Robert Clark, MacKall Crounse & Moore, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This is an appeal under Bankruptcy Rule 8001(a) from an order of Chief Bankruptcy Judge Robert J. Kressel, dated August 1, 1990, which withdrew reference of the case from the Interstate Commerce Commission (ICC) and granted summary judgment to the plaintiff. The appeal was timely filed and is now before this court under a *de novo* standard of review.

### I.

Sharm Express, Inc. (Sharm) was an interstate motor common carrier operating under authority issued by the ICC. As required by the Interstate Commerce Act (ICA), Sharm filed and published its rates for transportation (or tariffs) with the ICC. Sharm and LaSalle–Deitch Company, Inc. (LaSalle) negotiated for motor carrier services at rates below the filed tariff. Sharm provided that service to LaSalle from October 1984 to June 1986, transporting 239 total shipments. On September 23, 1987, Sharm filed for bankruptcy. The trustee in bankruptcy demanded that LaSalle pay the difference between the negotiated amount actually paid by LaSalle and received by Sharm and the filed tariff. LaSalle refused to pay, and the trustee brought an adversary proceeding against LaSalle in bankruptcy court seeking $46,385.05 in freight undercharges.

The case proceeded before Bankruptcy Judge Kressel, who held a scheduling conference in early 1989 and set August 25, 1989, as the deadline for the filing of all motions. On August 1, 1989, LaSalle filed a motion for summary judgment or, in the alternative, referral to the ICC. As grounds for referral, LaSalle alleged that Sharm had engaged in unreasonable practices by first billing at the negotiated rate and only later seeking to collect the filed rate. Judge Kressel denied the motion for summary judgment and granted the motion for referral to the ICC on September 12, 1989. The court, in its order, stated: "This proceeding shall be referred to the Interstate Commerce Commission for determination of all issues arising under Title 49 of the United States Code." The case was stayed before the bankruptcy court and the file administratively closed.

LaSalle did not file a petition with the ICC, however. No case is pending before the ICC. Ten months later, on July 13, 1990, the trustee for Sharm filed a motion with the bankruptcy court for withdrawal of reference from the ICC and for summary judgment. This motion was granted without a written opinion or statement of reasons, and judgment was entered for plaintiff for the freight undercharges of $46,385.05 plus costs and prejudgment interest from the start of the proceeding.

The issues presented on appeal are as follows:

1. Whether the bankruptcy court abused its discretion in accepting plaintiff's motion after the deadline set by its previous scheduling order.

2. Whether the bankruptcy court erred in withdrawing its previous reference to the ICC and granting summary judgment to the plaintiff.

3. Whether the bankruptcy court abused its discretion in awarding prejudgment interest from the start of the proceeding.

### II.

■ LaSalle argues that the bankruptcy court entertained plaintiff's motion for withdrawal of reference from the ICC and for summary judgment in violation of that

court's own previous scheduling order. The scheduling order stated, "motions not filed by [August 25, 1990,] will not be heard," and that extensions would be granted only "on motion and for good cause." LaSalle contends that since no motion for extension was filed and no good cause was shown, the bankruptcy court should never have heard plaintiff's motion. LaSalle seeks reversal on this ground.

Plaintiff argues that the bankruptcy court properly exercised its discretion regarding scheduling orders. Here, the court withdrew reference to the ICC after the decision of the Supreme Court in *Maislin Indus. v. Primary Steel, Inc.*, 496 U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), which, according to plaintiff, rejected the negotiated rate defense which had been the basis for the referral in the first place. Plaintiff also argues that LaSalle waived any objection to the hearing of plaintiff's motion by its silence before the bankruptcy court, and that LaSalle has failed to show that it was prejudiced by the allowance of the motion.

LaSalle replies that *Maislin* only affected one of the grounds for referral to the ICC, not the other ground (rate unreasonableness); that it was silent before the bankruptcy court because the court refused to allow either counsel to argue any issues; and that it was prejudiced by the outcome, i.e., by losing on summary judgment.

The scheduling deadlines set by the bankruptcy court did not deprive that court of the authority to issue its order. In light of the importance of *Maislin*, the court was well within its discretion by withdrawing reference from the ICC and considering plaintiff's motion for summary judgment. This conclusion is reinforced by LaSalle's failure to file a petition with the ICC after the original referral; it can hardly complain now that the ICC was never given a chance to hear its case and that the bankruptcy court was wrong for allowing plaintiff the opportunity to renew the case there.

### III.

■ LaSalle makes three arguments to support its position that withdrawal of this case from the ICC was in error. First, LaSalle argues that the ICC has primary jurisdiction over the determination of rate reasonableness, which should not have been rejected by the bankruptcy court by withdrawal and decision. Second, LaSalle argues that it can raise rate unreasonableness as a defense because the ICC does have authority to determine the reasonableness of past rates and that such determination should be made in this case. Third, LaSalle makes a due process constitutional argument that it has been deprived of a fair opportunity for a hearing on rate reasonableness by withdrawal of the case from the ICC.

Plaintiff responds that the issue of rate reasonableness need not go to the ICC in this case because LaSalle has introduced no evidence on the issue, only bare assertions that the rate was unreasonable. Plaintiff further argues that even if there were evidence of an unreasonable rate, it could only be considered in a suit by the shipper (here LaSalle) for reparation of overcharges, because the shipper is obligated to pay the filed rate and cannot unilaterally refuse to pay and then raise rate unreasonableness as a defense. Plaintiff argues that this would undermine the fundamental goals of the ICA, and that the majority of the circuit courts have so held.

LaSalle replies that the filed rate is unreasonable on its face, to that it need not introduce evidence on the issue. LaSalle also replies that rate unreasonableness can be raised as a defense in an overcharge action and should be determined in the first instance by referral to the ICC.

The starting point for analysis is *Maislin, supra*. In that case, the Supreme Court held that the ICC's consideration of the negotiated rate defense to undercharge claims was inconsistent with the basic goals of the ICA and the "filed rate doctrine" as it has developed in the courts. The classic statement of the filed rate doctrine is in *Louisville & Nashville R. Co. v.*

*Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915):

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

This "rigid approach" was reaffirmed in *Maislin,* 110 S.Ct. at 2766. The ICC had attempted to soften the effects of the filed rate doctrine by considering on a case-by-case basis whether it was an unreasonable practice to sue for an undercharge when a shipper and carrier had negotiated (but not filed) a rate other than the filed rate. The Court rejected the ICC's approach, holding that allowing secretly negotiated unfiled rates would undermine the basic purpose of the ICA to enforce nondiscriminatory public rates for common carriers. Thus *Maislin* precluded LaSalle from maintaining its unreasonable practices defense to plaintiff's undercharge action based on the fact that Sharm and LaSalle had negotiated a lower rate.

*Maislin* did not decide whether the filed rate in the case before it was unreasonable as alleged by the shipper. The Court stated, "The ICC did not determine whether the tariff rates were unreasonable even though respondent requested such a determination. We therefore must assume, for purposes of our decision today, that the rates were reasonable. The issue of the reasonableness of the tariff rates is open for exploration on remand." *Id.* at 2767 n. 10.[1] LaSalle relies on this for its position

that the issue of rate reasonableness must be referred to the ICC and the decision of the bankruptcy court reversed.

However, *Maislin* does not require a referral to the ICC to determine rate reasonableness, and under the circumstances of this case the bankruptcy court was correct to deny referral and grant summary judgment to plaintiff.

■ First, the bankruptcy court properly withdrew reference of this case from the ICC. The doctrine of primary jurisdiction should be invoked sparingly by the courts. *Red Lake Band of Chippewa Indians v. Barlow,* 846 F.2d 474, 476 (8th Cir.1988); *United States v. McDonnell Douglas Corp.,* 751 F.2d 220, 224 (8th Cir.1984). In each case, the question of whether or not to invoke the doctrine of primary jurisdiction is one of "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *McDonnell Douglas,* 751 F.2d at 224, *quoting United States v. Western Pacific R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). In this case, LaSalle has not presented any evidence regarding rate unreasonableness. Under these circumstances, the purposes of the doctrine of primary jurisdiction are not implicated since LaSalle has provided no basis for the need for the involvement of the ICC. Allowing LaSalle to resist withdrawal of reference from the ICC by a mere incantation of the doctrine of primary jurisdiction would be tantamount to allowing the doctrine to become "an abstraction to be called into operation at the whim of the pleader." *Western Pacific, supra,* 352 U.S. at 69, 77 S.Ct. at 167. Further, LaSalle's failure to submit a petition to the ICC in a prompt manner when the case was previously referred counsels in favor of withdrawal now. *See Puerto Rico Maritime Shipping Authority v. Valley Freight Systems,* 856 F.2d 546, 549 (3d

---

**1.** On remand, the district court referred the question of rate unreasonableness to the ICC.

*Maislin Indus. v. Primary Steel, Inc.,* No. 85–

Cir.1988).[2] The bankruptcy court's withdrawal of reference from the ICC was not improper.

■ Second, the bankruptcy court properly granted summary judgment to plaintiff. It is not sufficient to resist summary judgment by resting on one's pleadings without introducing any evidence to show that there is a disputed issue of material fact. Fed.R.Civ.P. 56(e); *see also Supreme Beef Processors, Inc. v. Yaquinto,* 864 F.2d 388, 393 (5th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990). LaSalle has failed to meet the standard for resisting summary judgment on rate reasonableness. LaSalle's failure to present any evidence of rate unreasonableness gives it no basis to oppose plaintiff's motion for summary judgment. In the bankruptcy court, plaintiff introduced evidence by affidavit that the filed rate for Sharm's services to LaSalle was $1.35 per mile for all freight moving between all points in the United States. LaSalle argues that this is unreasonable on its face, since ICC case law shows that there are many factors which can go into the reasonableness of a rate, including classifications of the property transported, cost of service, effects of competition, volume of shipments, distance of the haul, and so on. LaSalle contends that the single flat rate cannot possibly be reasonable, and that it need not present any evidence concerning factors which could show the unreasonableness of the rate.

LaSalle cannot resist summary judgment by creating hypothetical challenges drawn from other cases to call into question the single fact in evidence on Sharm's filed rate. A recent Third Circuit case, based on similar facts, supports this conclusion. In *Branch Motor Express Co. v. Caloric Corp.,* Civil 89–1130 [914 F.2d 241 (Table)] (3rd Cir. Aug. 14, 1990) the district court had initially referred the case to the ICC on the issues of unreasonable practices and rates. At the ICC, the shipper pursued only its unreasonable practices defense. The ICC found that the carrier had engaged in an unreasonable practice; it made no finding on unreasonable rates. The district court rejected the ICC's finding as contrary to the filed rate doctrine and granted the carrier summary judgment. The shipper appealed. The Third Circuit stayed the appeal pending the decision in *Maislin.* After the *Maislin* decision, the shipper requested remand to the district court so the case could be re-referred to the ICC to determine rate reasonableness. The appellate court rejected this request, stating that the shipper had presented no evidence concerning the reasonableness of the carrier's rates: "[The shipper's] mere mention of rate unreasonableness, entirely unsupported even now, is not sufficient to give it a second bite at the apple." *Id.,* slip op. at 4. The court held that it would be inappropriate to re-refer the case to the ICC for a determination of rate reasonableness when the shipper had submitted no evidence concerning the factors relevant to that determination.

The same reasoning applies in the present case. LaSalle was given one "bite at the apple" in the initial referral of the case to the ICC; unlike the shipper in *Branch Express,* it did not pursue any of its claims with the ICC. Plaintiff was entitled to summary judgment on the record

0021–CV–W–JWO–5, 1990 WL 264536 (W.D.Mo., Nov. 21, 1990).

**2.** This conclusion is supported by LaSalle's failure to plead rate unreasonableness in its answer, or to raise it directly for decision by the bankruptcy court. In its motion for referral to the ICC, dated August 1, 1989, LaSalle "requests this Court to ... grant a stay of all proceedings in this action for the purpose of referring the specific issues relating to the unreasonable practices conducted by Plaintiff to the ICC under the doctrine of primary jurisdiction." Br. of La-

Salle, Addendum at 7. LaSalle does make a passing reference to rate unreasonableness, but only in the context of challenging Sharm's practices. *Id.* Now that *Maislin* has struck down the ICC's approach to unreasonable practices, LaSalle would like to retry the case on a new theory of unreasonable rates. LaSalle might have done so, had it actually pursued its original referral to the ICC. LaSalle's failure of pleading and inaction before the ICC do not justify going back into this case now on a new theory.

before the court.[3]

 LaSalle argues that the bankruptcy court's withdrawal of reference denied it opportunity for a meaningful hearing on its rate unreasonableness defense as required under the due process clause of the United States Constitution. LaSalle contends that it cannot be liable for an undercharge until the ICC determines the reasonableness of Sharm's filed rate, and that the withdrawal of reference to the ICC deprived it of a fair hearing before the ICC. LaSalle's argument is misplaced. LaSalle, like every shipper, already has a meaningful opportunity to be heard on its challenge to Sharm's filed rate: by first paying the undercharge and then bringing an action for reparation. *See Maislin, supra,* 110 S.Ct. at 2767. Further, LaSalle's argument would lead to the absurd position that summary judgment could never be granted so long as the party resisting it kept raising hypothetical arguments based on unsubmitted evidence, but could have a meaningful hearing as soon as it chose to submit evidence. LaSalle's due process challenge should be denied.

### IV.

 LaSalle argues that the equities of this case dictate that plaintiff should not recover prejudgment interest. According to LaSalle, it was Sharm which negotiated the non-filed rates with LaSalle, and plaintiff waited three years before bringing the undercharge claim and another year and a half before moving for summary judgment. LaSalle contends that Sharm and plaintiff acted in bad faith, precluding prejudgment interest.

Plaintiff points out that the award of prejudgment interest is reviewable only for abuse of discretion. Plaintiff notes case law that "prejudgment interest is normally awarded in claims for undercharges." *Inman Freight Systems, Inc. v. Olin Corp.,*

807 F.2d 117 (8th Cir.1986). Plaintiff also states that the bankruptcy court awarded prejudgment interest only from the start of the proceeding, not from the time of the shipments, and argues that the court must have considered all the arguments of the parties by choosing such a middle course.

LaSalle has shown no abuse of discretion by the bankruptcy court's award of prejudgment interest from the start of the proceedings. It was LaSalle which did not act during the ten months the case was formally referred to the ICC. The award should be affirmed.

### ORDER

The bankruptcy court's order withdrawing reference of the case from the Interstate Commerce Commission (ICC) and granting summary judgment and prejudgment interest to the plaintiff is affirmed.

---

3. In *Sharm Express, Inc. v. 7/24 Freight Sales, Inc.,* 122 B.R. 999 (D.Minn.1991) (MacLaughlin, J.), a decision of the bankruptcy court to withdraw reference to the ICC and grant summary judgment to the carrier was reversed. The present case is distinguished from *7/24 Freight Sales,* however, in that here no evidence of rate unreasonableness was presented, while the court in *7/24 Freight Sales* found sufficient evidence to support referral. In addition, in the present case the defendant took no action to bring the case before the ICC, unlike *7/24 Freight Sales, Inc.*