# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1062

_____

| | | |
|---|---|---|
| DeBruce Grain, Inc., a Missouri Corporation, | * | |
| | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Union Pacific Railroad Company, a Utah Corporation, | * | |
| | * | |
| | * | |
| Defendant-Appellee. | | |

_____

Submitted: June 11, 1998
Filed:    July 8, 1998

_____

Before HANSEN and MURPHY, Circuit Judges, and DOTY[1], District Judge.

_____

MURPHY, Circuit Judge.

DeBruce Grain, Inc. (DeBruce) filed this action against Union Pacific Railroad Company (UPR) claiming that UPR's distribution of rail cars violated federal rail statutes and its tariff. The district court[2] dismissed the action without prejudice, finding

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

that it fell within the exclusive and primary jurisdiction of the Surface Transportation Board (STB).  DeBruce filed this appeal, and we affirm.

DeBruce is a grain merchandiser that purchases grain from farmers and smaller elevators for shipment to domestic and export markets.  It operates three elevators in Nebraska whose primary means of transporting grain is by rail.  DeBruce purchased transportation from UPR under the terms of UPR's multipart tariff which contained the terms and conditions of transport.  Section one of the tariff provided that rail cars could be obtained on seven to fourteen days notice if available.  Section two described a "guaranteed freight pool" (GFP) under which shippers subleased cars to the railroad with the understanding that it would provide 1.4 times the number of subleased cars for the shipper's use on a monthly basis.  UPR agreed to "make every reasonable effort to ensure that cars are placed as close to the preferred date as possible" but reserved the right to provide them at any time during the shipping period in which the GFP request was made (each month was divided into two shipping periods).  Section three of the tariff created a voucher system under which a shipper could purchase vouchers to obtain cars during a particular shipping period.  UPR auctioned the vouchers two months prior to a specified shipping period, but they were then frequently resold in secondary markets with the price driven by demand and availability.

When a shortage of grain cars developed in the fall of 1997, UPR filled requests for cars under the voucher system before those requested by GFP participants.  Under the tariff a GFP shipper who did not obtain a car within the shipping period it requested could choose to receive either a $250 penalty payment or a car at a later date.  Under the voucher program UPR was obligated to pay a penalty of $50 a day per undelivered car, up to a total of $400 for each car, and to provide a car as well.  When faced with the impossibility of filling all the requests for cars, UPR gave precedence to those under the voucher system since the financial penalties were greater if those requests were not met.  DeBruce says that as a result it did not timely receive its normal supply of cars

under the GFP program and was forced to try to buy vouchers at an inflated price and to restrict its new purchases of grain.

In 1995 Congress passed the Interstate Commerce Commission Termination Act under which the STB replaced the Interstate Commerce Commission (ICC) as the regulatory agency for rail transportation. 49 U.S.C. § 702. Application can be made to the STB by disappointed shippers for emergency orders similar to injunctions, 49 U.S.C. § 721(b)(4), and for damages, 49 U.S.C. § 11704. Under 49 U.S.C. § 10501, the STB has broad exclusive jurisdiction over questions of rates, service, tracks, and rail operations with limited exceptions for transportation provided by local governments. Federal court jurisdiction exists over claims for violations of STB orders and for charges that are in excess of the applicable rate. 49 U.S.C. § 11704.

DeBruce filed this action in the district court in late October of 1997, claiming that UPR's decision to give priority to car requests under the voucher program violated its tariff and its obligations to provide service under 49 U.S.C. §§ 11101 and 11121. DeBruce requested a temporary restraining order and an injunction requiring UPR to meet its demands for cars and money damages for its claimed loss of profits. The district court denied the request for injunctive relief and dismissed DeBruce's action without prejudice after determining that it fell within both the exclusive and primary jurisdiction of the STB. The district court believed that 49 U.S.C. § 11704(c), which provides jurisdiction for federal courts to act on certain violations of a carrier's duties, applies only to overcharges and not to the issues raised by DeBruce. It concluded that jurisdiction therefore rested exclusively with the STB under 49 U.S.C. § 10501(b). It also ruled in the alternative that the matter should be left to the STB for resolution under its primary jurisdiction since DeBruce's claims involved issues within the special expertise of the board requiring a uniform national response.

Shortly after the district court dismissed this action, DeBruce filed a claim with the STB. At that time the STB was holding hearings on the rail car shortage in the

western United States resulting from congestion on the shipping lines of UPR and the Burlington Northern and Santa Fe Railway Company (BNSF). In the course of denying DeBruce's request for an injunction, the STB stated that it had heard from "hundreds of shippers" and that "[e]ach has had service problems, and each wants relief." Supplemental record, p. 154.[3] It explained that it had attempted to resolve the shortage of cars while making sure to "avoid directly favoring any particular shipper over any other." Id. The STB had previously issued a service order providing a variety of remedies and ordering UPR and BNSF to work with shippers to develop a system of shipment priority, and it denied DeBruce's request for injunctive relief because it would have given shipments by DeBruce priority over all others and was therefore contrary to the public interest and ongoing efforts to resolve the rail car shortage. The STB stated that it would consider DeBruce's claim for damages, however, and left it to DeBruce to decide whether to pursue damages at that time or after normal service levels were restored.

DeBruce contends on appeal that the district court erred in finding the STB had exclusive jurisdiction over its claim and that primary jurisdiction is not properly applied since this case involves only an interpretation of UPR's tariff. UPR argues in response that by filing a claim with the STB, DeBruce made an election of remedies precluding it from going forward in federal court, that the STB has exclusive jurisdiction over the matter, and that in any event the issues are best left to the STB under the doctrine of primary jurisdiction.

---

[3]UPR has moved to supplement the record on appeal with documents produced before the STB, and DeBruce objects that they are not a part of the district court record. Fed. R. App. P. 10(a). Because these documents are relevant to the jurisdictional issues raised, the motion is granted. Fed. R. App. P. 2; U.S. v. Aulet, 618 F.2d 182, 187 (2nd Cir. 1980).

The basic question presented by the complaint in this case was whether UPR's response to DeBruce's request for cars was reasonable. Under the doctrine of primary jurisdiction a court may leave an issue for agency determination when it involves the special expertise of the agency and would impact the uniformity of the regulated field. Access Telecommunications v. Southwestern Bell, 137 F.3d 605, 608 (8th Cir. 1998). The question of the reasonableness of a railroad's response to a shortage of cars has been recognized as one best left for agency resolution due to the need for specialized expertise and uniform national treatment. See Spence v. Baltimore & Ohio Railroad Co., 360 F.2d 887, 890 (7th Cir. 1966). In Spence the Seventh Circuit reasoned that the distribution of scarce cars was best addressed by the ICC because uncoordinated treatment of shipper claims by various courts could exacerbate the imbalance in supply. Id at 891. Moreover, there were ongoing ICC hearings to determine the best response to the shortage. Id. At the time DeBruce filed this action, the STB was also conducting hearings which DeBruce participated in, and which led to several actions to counteract the shortage.

Assessing the reasonableness of UPR's response in this case to the car shortages would involve issues related to national rail policy, and a judicial ruling could affect rail transportation throughout the country. DeBruce's claims require not only legal analysis, but also "an informed evaluation of the economics or technology of the regulated industry," which supports the invocation of primary jurisdiction. Cf. Nader v. Allegheny Airlines, Inc., 96 S.Ct. 1978, 1987 (1976) (primary jurisdiction not applied because action for misrepresentation did not require expertise in the regulated industry). The district court properly concluded that DeBruce's claim should be left to the STB in the first instance due to its greater expertise with rail policy and the need for a uniform response to maintain regulatory uniformity.[4] Far East Conference v.

_____

[4]This court has not definitively stated the standard of review for the application of the doctrine of primary jurisdiction. See Access Telecommunications, 127 F.3d at 608. Since the district court can be affirmed under de novo review, it is not necessary to consider the possible application of the clearly erroneous standard.

<u>United States</u>, 342 U.S. 570, 574 (1952).  Dismissal without prejudice was appropriate since it did not disadvantage DeBruce, <u>Reiter v. Cooper</u>, 113 S.Ct. 1213, 1220 (1993). Full consideration of DeBruce's claim was available at the STB, and its decisions can be appealed to this court.  28 U.S.C. §§ 2321, 2342.  Although the district court discussed the primary jurisdiction of the STB as an alternative to its holding that jurisdiction over DeBruce's claims rested exclusively with the board, we may affirm on any basis supported by the record, <u>Cooksey v. Delo</u>, 94 F.3d 1214, 1218 (8th Cir. 1996).[5]

For these reasons, the order of the district court dismissing this action without prejudice is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5] Since we affirm on the basis of the board's primary jurisdiction, we need not reach the issue of whether the STB's jurisdiction was exclusive.